```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VERONIQUE GOINS,                               :

                       Plaintiff,              :

       -against-                               :   **REPORT AND RECOMMENDATION**

COMMISSIONER OF SOCIAL SECURITY,               :      12 Civ. 9204 (RA) (KNF)

                       Defendant.              :
------------------------------------------------------------X
```
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE RONNIE ABRAMS, UNITED STATES DISTRICT JUDGE

      Veronique Goins ("Goins") commenced this action against the Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision finding her ineligible for disability insurance benefits ("DIB"), pursuant to Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434. Before the Court is the Commissioner's motion for judgment on the pleadings, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Goins opposes the motion.

## BACKGROUND

*Administrative Procedural History*

      Goins was employed by Verizon as a customer service representative, from 1999 to 2008. After a work-related accident on March 24, 2005, Goins was treated at New York Orthopedic Surgery and Rehabilitation, from November 9, 2005, to January 19, 2011, for complaints of pain resulting from overuse of the right upper extremity. In February 2009, Goins filed a DIB application, alleging disability beginning on March 28, 2008. Her application was denied. On September 3, 2010, Goins appeared with counsel for a hearing before an ALJ. The

hearing was adjourned for Goins to undergo a consultative orthopedic examination and obtain additional medical evidence. On February 17, 2011, Goins appeared with counsel for a second hearing, which was attended by Dr. Gerald Galst ("Dr. Galst"), an impartial medical expert, and an impartial vocational expert ("VE"). On March 4, 2011, the ALJ found that Goins was not disabled because, considering her age, education, work experience and residual functional capacity, she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. On October 17, 2012, the Appeals Council denied Goins's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. This action followed. Goins alleges that the ALJ's decision is contrary to law and not supported by substantial evidence in the record.

*The ALJ's Decision*

The issue before the ALJ was whether Goins was disabled, beginning on March 28, 2008. The ALJ found that Goins: (1) meets the insured status requirements of the SSA through December 31, 2012; (2) has not engaged in substantial gainful activity, since March 28, 2008; (3) has severe impairments: degenerative disc disease of the cervical spine, carpal tunnel syndrome and status post release surgery, right elbow derangement and right wrist derangement; (4) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform light work, except that she is limited to lifting ten pounds and she cannot do work which requires frequent, repetitive use of the right hand; (6) is unable to perform any past relevant work; and (7) can, considering her age, education, work experience and residual functional capacity, perform jobs that exist in significant numbers in the national

economy.  The ALJ concluded that Goins has not been under a disability from March 28, 2008 through the date of his decision.

In determining Goins's severe medical impairments, the ALJ noted that they cause more than minimal functional limitations, and that Goins did not allege and the evidence does not support a finding of mental illness.  With respect to determination of Goins's residual functional capacity, the ALJ considered all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ determined that Goins's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found her statements concerning the intensity, persistence and limiting effects of those symptoms not credible to the extent they are inconsistent with the residual functional capacity assessment.  The ALJ considered Goins's allegations that she cannot work due to physical limitations resulting from degenerative disc disease of the cervical spine, carpal tunnel syndrome and status post release surgery in December 2009, right elbow derangement and right wrist derangement, which have caused her to experience chronic pain, tingling and numbness in her back and right upper extremity.  According to the ALJ, objective medical evidence supports the conclusion that, despite Goins's impairments, she is capable of performing exertionally light work with limitation to lifting ten pounds and without frequent, repetitive use of the right hand.

The ALJ noted that electromyography ("EMG") and nerve conduction studies, conducted in April 2006, failed to reveal abnormalities in the right hand.  Nerve conduction studies, conducted in April 2009, revealed right upper cervical radiculopathy.  A magnetic resonance imaging test ("MRI"), performed in May 2007, indicated a disc bulge at C3-C4 impinging upon the thecal sac.  X-rays of the cervical and lumbar regions of the spine, taken in April 2009,

revealed no abnormality and a subsequent MRI of the cervical spine, from November 2009, demonstrated straightening of the normal cervical lordosis with only minimal degenerative change. No evidence existed of disc herniation, central canal or neural foraminal narrowing within the thoracic spine. An MRI of the right elbow, performed in October 2006, showed a tear of the radial collateral ligament, and an MRI of the wrist, performed in May 2006, showed partial tears of the ligament and median nerve neuropathy.

  The ALJ considered the April 2009 evaluation by Dr. Sharon Revan ("Dr. Revan"), the consultative examiner who performed an independent medical examination of Goins. Dr. Revan observed that Goins was in no acute distress and she exhibited a normal gait, stance and full squat and could walk on her heels and toes without difficulty. She noted that Goins had full range of motion of the cervical spine, decreased range of motion of the lumbar spine, and a straight leg raising test yielded negative results. Goins demonstrated full range of motion of the shoulders, elbows, forearms, wrists, hips, knees and ankles bilaterally, with strength of 5/5 in the upper and lower extremities. Dr. Revan noted no motor or sensory deficit and that Goins's hand and finger dexterity was intact, with grip strength of 5/5 bilaterally. Goins reported no problems climbing stairs or walking, but she experienced lower back pain sitting and standing. Dr. Revan concluded that Goins had no limitations with the upper extremities for fine motor activities, walking, climbing stairs, laying down and personal grooming, and she had mild limitations with sitting and standing due to back pain and mild limitations with activities of daily living secondary to her joint pain.

  The ALJ considered the October 2010 consultative examination by Dr. Louise Tranese ("Dr. Tranese"), who observed that Goins was in no acute distress, walked with a normal gait, was able to walk on heels and toes without difficulty, required no assistive device and no help

with changing or getting on and off the examination table.  Dr. Tranese noted that Goins had full range of motion of the cervical spine, the shoulders, elbows, forearms, wrists and fingers bilaterally, hips, knees and ankles, and her hand and finger dexterity was intact.  She observed mildly decreased range of motion of the lumbar spine.  Dr. Tranese opined that Goins had a mild to moderate limitation using her right hand to perform repetitive or sustained gross manual activities and a mild restriction performing repetitive or sustained fine motor activities that require use of the right hand.

The ALJ noted that the independent medical examination conducted by Dr. Howard Baruch ("Dr. Baruch") at the request of the Worker's Compensation Board, in November 2008, supports the residual functional capacity finding.  Dr. Baruch observed that Goins had a full range of motion of the shoulders, elbows, wrists and hands bilaterally and he noted that a prior EMG study failed to demonstrate nerve damage.

In May 2010, Goins was examined by Dr. Robert Israel ("Dr. Israel").  Upon examination of the cervical spine, Dr. Israel noted normal lordosis, no tenderness or spasm on palpation, full range of motion, intact sensation, muscle strength 5/5 in the upper extremities and firm grasping power.  Examination of the right hand indicated no swelling or tenderness, normal range of motion, no atrophy and intact sensation.  Dr.Israel concluded that Goins was capable of work activities and activities of daily living, without restrictions.

Dr. Galst reviewed Goins's medical records and testified at the hearing that the objective medical evidence contradicts the opinions and findings of Goins's treating physicians concerning carpal tunnel syndrome and other limitations.  For example, Dr. Galst noted that, while Goins alleged carpal tunnel syndrome with pain and tingling in the right hand, EMG studies showed no median nerve abnormality.  Although Goins underwent carpal tunnel release surgery, she still

experienced the same symptoms, suggesting that she was not treated correctly. Goins complained about lower back pain, but she had not had any imaging studies of her lower back and no confirmatory studies of the cervical spine. Dr. Galst noted that the studies in the record did not show substantial disc herniation or foraminal compromise that would be expected to cause radiculopathy. Dr. Galst concluded that, although Goins's treating sources opined that she was substantially disabled and could not perform work of any kind, the opinions of three separate examining physicians with similar specialities and objective evidence did not indicate significant abnormalities or sensory issues. Dr. Galst concluded that, based on Goins's medical record, she was capable of performing light work that did not involve repetitive motions with the right hand.

The ALJ noted that he gave thorough consideration to all medical opinions in the record. However, he indicated that the opinions of Goins's treating physicians, Dr. Christopher Kyriakides (Dr. Kyriakides") and Dr. David R. Adin ("Dr. Adin"), both D.O. (Doctor of Osteopathy) specialists in physical medicine and rehabilitation, were given less weight, as they are not consistent with the objective medical evidence in the record. The ALJ rejected the treating physicians' opinions on disability, since those determinations are not medical issues and are not given controlling or significant weight. The ALJ concluded that Goins was capable of performing light work, limited to lifting ten pounds and she cannot perform work which requires frequent, repetitive use of the right hand.

The ALJ considered and relied upon the VE's testimony, including that Goins's past relevant work as a customer service representative or clerical and receptionist work exceeds her residual functional capacity. The ALJ found that Goins is an individual between the ages of 18-49, has at least a high school education and is able to communicate in English. He

determined that transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that Goins is not disabled, regardless of her transferable job skills. The ALJ determined that, considering Goins's age, education, work experience and residual functional capacity, Goins is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as: (a) a taxi dispatcher, sedentary, semi-skilled job; (b) locker room attendant, light, unskilled job; and (c) surveillance system monitor, sedentary, unskilled job. The ALJ concluded that Goins has not been under disability from March 28, 2008, to the date of his decision.

***Commissioner's Contentions***

The Commissioner contends that substantial evidence supports the ALJ's determination that Goins did not have an impairment that met or medically equaled the listings and retained the residual functional capacity to do light work with limitations. According to the Commissioner, the ALJ assessed properly Goins's credibility, and his resulting findings should be accorded deference. The Commissioner contends that the finding of complete disability by Goins's treating physicians is not supported by the record. The ALJ gave appropriate weight to the treating physicians' findings, declining to construe their opinions as precluding all forms of work, since none of the treating physicians made specific findings that would preclude Goins from doing light work that did not require extensive use of the right hand. Dr. Kyriakides acknowledged that Goins may be able to perform such work despite his diagnosis of carpal tunnel syndrome. The ALJ found that the disability determination by the treating physicians was contradicted by the opinions of the testifying expert and three physicians with similar specialities and that objective medical evidence of significant abnormalities and sensory issues was lacking.

Moreover, substantial evidence supports the ALJ's finding that Goins was able to perform work that exists in the national economy, as testified by the VE.

*Goins's Contentions*

In opposition to the motion, Goins submitted an affirmation, stating that the ALJ failed to take into account her testimony about the pain she was feeling in her back. Goins contends that the motion should be denied because

> all of the medical evidence was not taken into account because testing evidence was not available at the hearing. I did not have testing completed at the time of the hearing. I was questioned by the courts [sic] doctor about the pain I was feeling, its placement and symptoms. I believed that this was sufficient information. I had attached the testing and doctors [sic] notes that have since been completed.

In opposition to the motion, Goins submitted additional evidence: (1) MRIs of the lumbar spine, dated December 28, 2011, and March 25, 2013; (2) an MRI of the right knee, dated July 24, 2013; (3) "Progress Notes" of Nurse Practitioner Deepti Projapati, dated September 13, 2012, and April 1, 2013; (4) an Electro-Diagnostic Study, conducted by Dr. Sudha Akkapeddi, dated August 9, 2012; and (5) a "Clinical Neurophysiology Laboratory Department of Neurology Montefiore Medical Center EMG/Nerve Conduction Studies," performed by Dr. Ann Hanley, dated October 18, 2011.

*Commissioner's Reply*

The Commissioner contends that Goins attached additional medical evidence to her affirmation in opposition to the motion, seemingly asking to remand the action to the ALJ to consider that evidence. The Commissioner maintains that the additional evidence, dated from October 18, 2011, to July 24, 2013, does not relate to the period before the ALJ's March 4, 2011 decision; rather, it concerns Goins's condition after the adjudicated period. As such, that

evidence cannot indicate that her condition was more serious during the period at issue and cannot form the basis for remand in this action.

## DISCUSSION

*Legal Standard*

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
>
> Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA

9

regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.
>
> Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) ( internal citations omitted).

If a claimant's impairment(s) does not meet or equal a listed impairment following step three, the agency will assess and make a finding about the claimant's residual functional capacity "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 404.1520(e). Residual functional capacity "is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the [residual functional capacity] assessment must include a discussion of the individual's abilities on that basis." SSR 96-8P, 1996 WL 374184. The residual functional capacity assessment is used at step four of the sequential evaluation process, to determine if the claimant can do past relevant work, and at step five, to determine if the claimant can adjust to other work. See 20 C.F.R. § 404.1520(e).

When "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2). Unless the ALJ gives a treating physician's opinion controlling weight, the ALJ must consider the following factors in deciding what weight to accord to any medical opinion: (1) the existence of an examining relationship; (2) the existence of the treatment relationship, namely the length of the treatment relationship and the frequency of examination; (3) supportability, namely, more weight is given the more relevant the evidence and the better the explanation presented are in supporting an opinion; (4) consistency of the opinion with the record; (5) specialization; and (6) other relevant factors. See C.F.R. § 404.1527(d).

A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. 405(g). To obtain a remand based on new evidence, the plaintiff must show that the evidence proffered is: (1) "'new' and not merely cumulative of what is already in the record"; and (2) "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Lisa v. Sec'y of Dep't of Health & Human Servs., 940 F.2d 40, 43 (2d Cir. 1991) (citations omitted). Additionally, the claimant must show "good cause for her failure to present the evidence earlier." Id. To be material, new evidence must be such that "would have influenced the [Commissioner] to decide claimant's application differently." Id.

*Application of Legal Standard*

    <u>Additional Evidence</u>

    The additional evidence concerns Goins's condition during the period after the ALJ's March 4, 2011 decision, namely, from December 28, 2011, to July 24, 2013.  The additional evidence submitted in reply by Goins, while new in the sense that the tests were conducted after the hearing, is not material because it is not relevant to her condition during the time period for which benefits were denied her.  For example, the December 28, 2011 MRI of the lumbar spine indicates "central/right paracentral L5-S1 disc herniation resulting in moderate right lateral recess and foraminal stenosis," and the March 25, 2013 MRI indicates "[m]ild discogenic degenerative disease at L4-L5 and L5-S1."  These two MRIs do not pertain to the adjudicated time period, and they do not indicate that Goins's condition was more serious during the period at issue than was presented previously by the record before the ALJ.  The evidence in the record indicates that Goins's medical conditions pertained to her cervical spine, right wrist and right elbow.  While the record indicates that Goins complained of lower back pain, no medical evidence shows any findings of limitation with respect to her lumbar spine or right knee.  No reasonable possibility appears to exist that the new evidence, submitted in reply, would have influenced the Commissioner to decide Goins's application differently.  Thus, any medical conditions that developed subsequent to the ALJ's decision, which do not pertain to the conditions for which Goins had been treated and examined during the period at issue, are not material to her condition during the relevant period.  Moreover, Goins failed to explain why, if any medical evidence concerning her lumbar spine and right knee that pertains to the relevant period exists, she failed to present it to the ALJ.  Thus, Goins did not show good cause for her failure to present the

evidence earlier. Accordingly, ordering that additional evidence be taken before the Commissioner is not warranted.

   <u>Whether the ALJ's Decision Is Supported by Substantial Evidence</u>

   Substantial evidence supports the ALJ's finding that Goins did not have an impairment that meets or medically equals the criteria in the listing at 20 C.F.R Part 404, Subpart P, Appendix 1. The ALJ considered criteria for the listings 1.02 (requiring evidence of gross anatomical deformity and chronic joint pain and stiffness with signs of limited range of motion), 1.04 (requiring a disorder of the spine) and 11.13 (requiring significant and persistent disorganization of motor function in two extremities), finding that the medical evidence did not support the finding that Goins meets the criteria for those listings. Goins's right wrist and elbow impairments do not indicate an inability on her part to perform fine and gross manipulations effectively and she had no documented motor, sensory or reflex deficits, despite her feeling of numbness and tingling in her right elbow and wrist. Concerning Goins's back, despite the treating physicians' observations of range-of-motion deficits in her cervical spine, no record exists of nerve root compression, positive straight-leg raising testing or sustained motor loss or gross muscle weakness. Goins was not diagnosed with lumbar spine stenosis and she is able to ambulate independently and carry out daily activities, despite the alleged difficulty. Moreover, Goins had problems only with her upper right extremity, not in two extremities, as required by listing 11.13.

   In determining Goins's residual functional capacity, the ALJ considered all medical evidence, giving less weight to the findings of the treating physicians appropriately because they were not consistent with the medical evidence in the record. In deciding to give less weight to the treating physicians' opinions, the ALJ considered all relevant factors required to be

considered, providing detailed examples and explanations of their inconsistency with the objective medical evidence in the record.  Moreover, the ALJ rejected correctly the treating physicians' opinion that Goins was disabled, since that opinion is reserved for the Commissioner.

The ALJ's assessment of Goins's credibility was proper. The ALJ credited Goins's testimony about her symptoms and that they could reasonably be expected to be caused by her medically determinable impairments.  However, he found Goins's statements about the intensity, persistence and limiting effects of these symptoms to be incredible to the extent they were not consistent with the assessment of the medical and other evidence in the record, including Goins's work history.  The ALJ's determination that Goins is capable of performing limited light work that exists in the national economy is supported by substantial evidence and the ALJ relied properly on the VE's testimony in making that determination.

<u>Whether the ALJ's Decision Was Contrary To Law</u>

The ALJ followed all five steps of the sequential analysis required to be performed in determining disability.  At each of the five steps, he articulated and applied the correct legal standard in making his determinations.  The Court perceives no legal error in the ALJ's determinations.  Thus, the ALJ's decision is not contrary to law.

## RECOMMENDATION

For the foregoing reasons, I recommend that the defendant's motion for judgment on the pleadings, Docket Entry No. 19, be granted.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written

objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams, 40 Centre Street, Room 2203, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Abrams. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
       May 20, 2014

Copy mailed to:

Veronique Goins

Respectfully submitted,

*/s/ Kevin Nathaniel for*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE